IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HOPE HARPER, Individually and as Personal
Representative of the Estate of LARRY HARPER,
Deceased,

       Plaintiff,

vs.                                          Civ. No. 96-1048 BB/WWD

THE CITY OF ALBUQUERQUE, ALBUQUERQUE
POLICE DEPARTMENT, CHIEF OF POLICE JOE
POLISAR, Individually in his official capacity and
ED SAUER, Individually and in his official capacity,

       Defendants.

MEMORANDUM OPINION AND ORDER

       This matter comes before the Court upon the July 14, 1998, referral of the Honorable Bruce D. Black to the undersigned for consideration of certain issues involving proposed witnesses.

Background.

       On June 28, 1996, Plaintiff filed a complaint against defendants in the Second Judicial District of the State of New Mexico. The case was removed to this Court on July 29, 1996, and an answer to the complaint was filed August 2, 1996. An Initial Scheduling Ordered directed that a provisional discovery plan be filed by the parties by September 24, 1996. The Provisional Discovery Plan on October 7, 1996 provided for disclosure and reports with respect to Plaintiff's experts by January 15, 1997; and by Defendants by February, 1997. Supplementation of the reports was to be due "60 days before trial." Trial was set for September 2, 1997, and a pre-trial conference was set for August 6, 1997.

       In the Initial Pre-Trial Report filed November 13, 1996, Plaintiff was to disclose her experts and to serve their reports by January 15, 1997; and Defendants, by February 14, 1997. By an order

1

entered January 10, 1997, discovery was stayed except for discovery in connection with Defendants' motion for summary judgment and motion to dismiss. On April 27, 1997, an order prepared by counsel was entered which extended the deadline for discovery until August 27, 1997. The order did not mention expert witnesses. On September 9, 1997, an order drafted by counsel was entered extending "certain discovery deadlines." Again, no mention was made of expert witnesses. On October 10, 1997, (document is incorrectly stamped "1996") Plaintiff filed a first amended complaint; and the matter was set for trial on a trailing docket commencing February 9, 1998. the trial setting was vacated and the trial was tentatively reset for April or May of 1998. I entered a memorandum opinion and order which set new deadlines for Fed. R. Civ. P. 26(a)(1) disclosures, ceratin specified discovery, and for submission, on March 31, 1998, of the pre-trial order. No reference is made to expert witnesses.

On March 19, 1998, the parties jointly moved to obtain a "revised scheduling order," and an order, prepared by counsel, was entered on March 23, 1998. The order sets a schedule for the taking of the depositions of Defense experts Michael Hillman, Thomas Streed, and Steve Wilkinson during the month of April, 1998. The order also scheduled the deposition of Plaintiff's expert Michael Cosgrove on June 13, 1998. Updated reports under Fed. R. Civ. P. 26 were to be served 5 days before the respective deposition. In a pre-trial status report filed July 13, 1998, Plaintiff indicated that she intended to file (1) a Daubert motion to exclude the testimony of the witnesses Hubler, Streed, and Hillman on the "Suicide by Cop" theory; and (2) a motion to exclude hearsay testimony of Thomas Streed concerning "privileged communication" to Charter Heights counselor Ken Wells; and (3) a motion to exclude testimony of untimely identified witnesses including James Ebert. Defendant also planned to seek the exclusion of certain of Plaintiff's witnesses. On July 31, 1998, Jerry A. Walz, Attorney at Law, entered his appearance as counsel for Defendants. Through August 11, 1998, the

docket in this case shows 249 entries. The events mentioned above represent only a small portion of the activity in this law suit.

Discussion.

This law suit was set for trial on September 2, 1997; February 9, 1998; April or May of 1998; and, finally, on September 8, 1998. Defendants seek to rebut expert testimony which they first learned about on June 8, 1998, when Michael Cosgrove submitted a supplementary report which apparently altered the conclusions contained in his initial report which allegedly had been relied upon by Defense experts at the time of their depositions taken in April, 1998. Defendants now seek to add two "rebuttal" witnesses, to address the altered conclusions of Michael Cosgrove. Plaintiff would exclude these experts as being offered in an "untimely" manner. I do not find it particularly helpful to read and parse the tortured procedural history of this case. There are enough procedural twists and turns in this case to permit a variety of interpretations of what might be fair.

Defendants had every opportunity to investigate fully the shooting scene and to determine the presence and origin of any bullet fragments. Such an inquiry would not have been uncommon in a well conducted investigation. The protracted failure of the Defendants to make such an investigation until they were motivated by the possibility of "rebutting" a theory advanced by the Plaintiff is difficult to explain as is the possibility that Defendants were tricked by Plaintiff's counsel into the "cart-before-the-horse" sequencing of the depositions of the respective experts in order to create this situation. Defendants certainly should have been able to anticipate that the positions of the persons present at the time of the shooting might be critical. The same is true with respect to the mapping and diagraming of the scene of the shooting. Nevertheless, Defendants were entitled to rely on the initial report of plaintiff's expert in preparing their rebuttal.

When the Plaintiff's expert changed the thrust of his testimony after getting experts picked for the specific purpose of addressing his original contentions, fairness requires that Defendants be allowed

to meet the new theory.  Accordingly, the two experts,  Dr. James Ebert and Lucien Haig,  should be allowed to testify.  These experts should be produced promptly by Defendants for depositions if Plaintiff so desires.

Plaintiff apparently plans to use Dr. Mark Heitner, the decedent's treating psychiatrist, to offer expert opinions outside the scope of his treatment of decedent, and on June 26, 1998, Plaintiff served a report from Dr. Heitner on Defendants.  Defendants sought to identify Dr. Sam Roll as an expert on July 31, 1998, some thirty-five days after receiving Dr. Heitner's report.  No report from Dr. Roll was tendered when Dr. Roll was disclosed, although a report was promised in short order.  Although Dr Heitner has been known to Defendants for a long time, and although Defendants did not act with alacrity after receiving Dr. Heitner's report; I do not think that Plaintiff suffers any prejudice by allowing Defendants to identify Dr. Roll  belatedly given the timing of Dr. Heitner's report.  I note also that Defendants will make Dr. Roll available to Plaintiff for a deposition at no cost to Plaintiff.  I find that under these circumstances that Dr. Roll should be allowed to testify unless Plaintiff successfully seeks to bar his testimony on other grounds by a motion in limine or at the time of trial.

This cause shall proceed in accordance with the foregoing.

IT IS SO ORDERED.

_____
UNITED STATES MAGISTRATE JUDGE